359 So.2d 339 (1978)
Robert W. VAUGHN
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 49937.
Supreme Court of Mississippi.
May 31, 1978.
Miller & Dean, Mike L. Cordell, Greenville, for appellant.
Robertshaw & Merideth, Randolph Noble, Jr., Greenville, for appellee.
EN BANC.
SUGG, Justice, for the Court:
This is an appeal from a garnishment proceeding in the Circuit Court of Washington County which resulted in a directed verdict for State Farm Mutual Automobile Insurance Company. The question for decision is whether the operator of an insured automobile was an additional insured within the terms of the omnibus clause of a motor vehicle liability policy.
*340 Robert Vaughn obtained a judgment against James Creely, a minor, in the amount of $9,048.17. The judgment arose out of an accident which occurred on November 7, 1970 in which Vaughn's minor son, Michael, sustained injuries while he was a passenger in an automobile driven by Creely.[1] The automobile which Creely was driving was owned by E.H. McGarrh who had obtained a motor vehicle liability policy from State Farm on the automobile naming McGarrh as the insured.
Vaughn filed a suggestion of garnishment against State Farm suggesting that State Farm was indebted to Creely under the omnibus clause of the policy issued to McGarrh. State Farm answered the writ of garnishment and denied that it was so indebted. Vaughn contested the answer, and thus the issue was made up as to whether Creely was an additional insured within the meaning of the omnibus clause. The trial court held that Creely was not an additional insured and directed a verdict against Vaughn.
On the date of the accident McGarrh was divorced from his wife who lived separate and apart from him with some of the children of the parties, including Deborah McGarrh (now Deborah McGarrh Walls). McGarrh allowed his ex-wife to keep the automobile in question at her residence and permitted her unrestricted use of the automobile. Neither Mrs. McGarrh nor any of the children were named as insureds under the policy.
The automobile was within the primary and unrestricted control of Mrs. McGarrh who would allow Deborah to use the car upon request. Although Deborah used the car on frequent occasions, the key was kept by her mother and Deborah's use was conditioned upon first obtaining permission from her mother. Deborah visited her father frequently, and he visited Deborah in the home of his ex-wife frequently. On some occasions Deborah drove the automobile to her father's home for the purpose of a visit, but he did not object to the use of the automobile by Deborah, and placed no specific restrictions on her use of the automobile.
On November 9, 1970, Deborah was sixteen years of age. She requested use of the automobile from her mother to visit a local skating rink. After obtaining permission to use the automobile, Deborah arrived at the skating rink at approximately 7:00 p.m. She testified that she was approached by Michael Vaughn, who requested permission to use the automobile to go to a girlfriend's home near the skating rink. Although Deborah initially refused to allow Michael the use of the automobile, she stated that she finally consented and permitted him to take the automobile with the understanding that he would go to his girlfriend's home and return in approximately 30 minutes.
Michael Vaughn testified that he did not have a conversation with Deborah at the skating rink, but said that James Creely obtained permission to use the car. Michael said that he and Creely first went to his girlfriend's house about two blocks from the skating rink, then to a local convenience store, and then to another friend's home. After completing a visit at the second friend's home, Michael and Creely were returning to the skating rink with Creely driving the automobile when the accident occurred.
Vaughn assigns as error the action of the lower court in sustaining the motion of State Farm for a directed verdict. When considering a motion for a directed verdict the court must examine the evidence for the plaintiff in the light most favorable to the plaintiff. Paymaster Oil Co. v. Mitchell, *341 319 So.2d 652 (Miss. 1975). There is a conflict in the testimony of Deborah and Michael as to who obtained permission from Deborah to use the automobile. Deborah said she gave permission to Michael, but he maintained she gave permission to James Creely. We accept Michael's version under the rule stated above; however, it does not matter whether permission was given to Michael or Creely because neither is an additional insured under the omnibus clause for the reasons stated hereafter.
The omnibus clause in the policy issued to McGarrh reads as follows:
Insured  the unqualified word `insured' includes
(1) the named insured, and
(2) if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and
(3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and
(4) any other person while using the owned motor vehicle, PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION, and
(5) under coverages A and B any other person or organization, but only with respect to his or its liability for the use of such owned motor vehicle by an insured as defined in the four subsections above.
While the omnibus clause of the policy extends coverage to another person only while using the automobile with the permission of the insured within the scope of such permission, section 63-15-43 Mississippi Code Annotated (1972) requires that such liability policies cover persons using the vehicle with either the express or implied permission of the named insured. Section 63-15-43 follows:
(1) A `motor vehicle liability policy' as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 63-15-39 or section 63-15-41, as proof of financial responsibility, and issued, except as otherwise provided in section 63-15-41, by an insurance company duly authorized to write motor vehicle liability insurance in this state, to or for the benefit of the person named therein as insured.
(2) Such owner's policy of liability insurance:
(a) shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted.
(b) shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, twenty thousand dollars ($20,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident, and five thousand dollars ($5,000.00) because of injury to or destruction of property of others in any one (1) accident.
It is now settled in this state that, if there is any difference between the terms of a motor vehicle liability policy as written, and the requirements of the above statute, the requirements of the statute are incorporated into and become a part of the policy. State Farm Automobile Insurance Company v. Moore, 289 So.2d 909 (Miss. 1976); United States Fidelity & Guaranty Co. v. Stafford, 253 So.2d 388 (Miss. 1971).
In five cases we have considered omnibus clauses in motor vehicle liability policies to *342 determine whether the operators of the motor vehicles were covered as permittees of the named insured. Two of the cases dealt with restricted permission given by the named insured to use a vehicle while three dealt with unrestricted permission.
Employers Mutual Casualty Co. v. Poe, 191 So.2d 541 (Miss. 1966) involved restricted permission given by the named insured to a third party to use the vehicle. In this case we noted that three different rules have been applied in various jurisdictions in passing on the effect of a deviation from the scope of permission. The three rules are, (1) the strict or conversion rule, (2) the liberal rule, and (3) the moderate or minor deviation rule.[2]
Although the Court did not "adopt categorically" either rule, it applied the minor deviation rule in deciding the case. The Court held that the employee was guilty of violent deviation from the permission granted by the named insured; consequently, the policy did not cover the use of the vehicle by the permittee.
In Travelers Indemnity Co. v. Watkins, 209 So.2d 630 (Miss. 1968), we specifically adopted the minor deviation rule.[3] This case also involved restricted permission given by the named insured, and we held that the Travelers policy covered the original permittee because his use of the truck was within the time, geographic and purpose limitations of the permission granted, and constituted only a minor deviation from the permission granted.
The case of International Service Insurance Company v. Ballard, 216 So.2d 535 (Miss. 1968) involved unrestricted permission given by a named insured to a third person to use an automobile. This case announced the rule that use by a second permittee is covered under the omnibus clause, provided the named insured gives unrestricted permission to another (first permittee) to use an insured vehicle, and the first permittee allows a third party (second permittee) to use the insured vehicle to serve some purpose of the first permittee. This rule was followed in Moore and Stafford, discussed infra.
United States Fidelity and Guaranty Company v. Stafford, 253 So.2d 388 (Miss. 1971) is another case where the named insured gave unrestricted permission to use an insured automobile. The automobile was being driven by a third person, the second permittee, while serving the benefit and purpose of the original or first permittee. We stated the general rule governing operation of an automobile by a second permittee with the permission of the original permittee in the following language:
In National Farmers Union Property & Casualty Company v. State Farm Mutual Auto Insurance Company, 277 F. Supp. 542 (D.Mont. 1967), the Court, after dealing with facts somewhat similar to the facts in this case, quoted with approval from 7 Am.Jur. Automobile Insurance section 117 (1963) as follows:
The "general rule" that a permittee may not allow a third party to "use" the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is "operating" the car for the "use of the first permittee" and that such "use" is within the coverage of the omnibus clause.
(253 So.2d at 392)
We held the omnibus clause covered the operation of the vehicle by the second permittee, and that he was driving the vehicle with the implied consent of the named insured, because: (1) the original permittee *343 was riding in the vehicle at the time of the accident, and (2) the second permittee, in operating the vehicle, was serving some purpose of the first permittee.
The case of State Farm Mutual Automobile Insurance Co. v. Moore, 289 So.2d 909 (Miss. 1974) also involved the use of an insured vehicle where the named insured had given the first or original permittee unrestricted use of the vehicle, although he was not riding in the vehicle when the accident occurred. The first permittee allowed a third person, as second permittee, to use the automobile for his, the first permittee's, benefit. We held that the omnibus clause covered the use of the vehicle by the second permittee because the first permittee was given unrestricted use of the automobile and, when the accident occurred, the second permittee was serving a purpose of the first permittee.
In our case, E.H. McGarrh was the named insured, and his ex-wife, as first permittee, had unrestricted use of the insured automobile. The second permittee was Deborah McGarrh, the daughter of the parties, who had possession of the automobile the night in question with the express consent of her mother. The third permittee, James Creely, was driving the automobile with the consent of Deborah, the second permittee. Mrs. McGarrh, the first permittee, did not give Creely permission to drive the automobile, she was not riding in the automobile at the time of the accident, and Creely was not using the automobile to serve any purpose for Mrs. McGarrh. The facts do not justify the inference that Creely was using the insured automobile with the implied permission of the named insured; therefore, Creely's use of the automobile was not covered by the omnibus clause of the policy.
The other assignments of error have been considered but do not merit discussion.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM and COFER, JJ., concur.
LEE and BOWLING, JJ., dissent.
BOWLING, Justice, dissenting:
I respectfully dissent from the majority in this case.
It is elemental in law that no cases are exactly identical. The facts of each case have to be considered along with the established legal principles. In my humble opinion, the authorities, facts and discussions contained in the majority opinion are sufficient to require a reversal of the case.
First, let us look at the reason for the "omnibus clauses" being required as a part of automobile casualty insurance policies. It is obvious that the reason therefor is not primarily for the purpose of protecting the person operating the vehicle but is primarily for the purpose of protecting the traveling public who are injured by that person. Modern law makes an effort to be sure that as many vehicles as possible traveling on our modern highways and streets are covered by liability insurance.
The Mississippi Legislature recognized the above many years ago by enacting into law the Motor Vehicle Safety Responsibility Act of 1952. This law as quoted in the majority opinion requires that automobile liability insurance policies in this State include a provision that the company
... shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles. (Emphasis supplied).
We stop here to observe that although this provision has been required for over twenty-five years, it has never been enforced. The policy in question has no such provisions and the majority opinion is impressive by quoting from the policy in the case before us where it says that "provided the operation and the actual use of such vehicle are with the permission of the named insured or such spouse and are within the scope of such permission... ."
*344 We would dare to surmise that if every citizen of this State would read his automobile liability insurance policy, he would not find the statutorily required clause but would find a clause similar to that quoted above.
Furthermore, in reading the cases cited in the majority opinion, each recognized that the omnibus clause in the policy before the Court did not conform to Mississippi statutory requirements and each held that the law required a clause as enacted by the Legislature in 1952. But none of them suggested doing anything about requiring that law to be enforced. It is unbelievable to this writer that the proper regulatory agencies of our State would allow this condition to exist for approximately twenty-five years, with the Court condemning the violation and nothing whatever being done. It is just that simple.
This Court, in prior cases, has reiterated the pronouncements of all jurisdictions setting out the purpose of the omnibus clause. In U.S.F. & G. Co. v. Stafford, 253 So.2d 388 (Miss. 1971), this Court said:
We are of the opinion that the court should take into consideration the fact that vast numbers of automobiles are being driven on the streets and highways of this state by persons who are not the named insureds in the public liability policies covering these vehicles. The omnibus clause should be construed in the light of the manifest public policy of this state as indicated in the Motor Vehicle Safety Responsibility Act and in the later Uninsured Motor Vehicle Act, both of which clearly indicate the legislative policy of protecting the public and providing insurance coverage where persons are insured on the highways of the state.
In Travelers Indemnity Company v. Watkins, 209 So.2d 630 (Miss. 1968), this Court stated:
The purpose of the omnibus clause has generally been recognized as being a liberalizing one. Thus, it has been said that the purpose of the clause is to extend liability insurance coverage to persons other than the owner who had permission to use the car without arbitrary and definite restrictions on such use. Similarly, it has been said that the purpose of the clause is not only to protect a person riding in or legally operating a car with the permission required by the policy, but also to protect any person injured by the operation of the car by giving him a cause of action against the insurer for injuries deemed by law to have been caused by the operation of the car.
In my opinion, the legal requirements of a policy applying the omnibus clause to drivers operating the vehicle with the "express or implied" permission of the named insured require a holding in the case at bar that Deborah McGarrh's permittee was an insured under the omnibus clause that should have been in the policy, and admittedly applies under the Mississippi statute. We are faced with a very unusual situation  a happy relationship between divorced parents. The facts of that relationship as they apply to the automobile in question are undisputed. Mr. McGarrh and Mrs. McGarrh (divorced approximately two years) lived not too far apart in Greenville, Mississippi. The teenage children lived in the house with their mother. All had an excellent relationship. Deborah (sixteen years old and having a driver's license at the time of the collision) was close to her father and, according to her, she saw him every day. Mr. McGarrh purchased two automobiles; he kept one for his own use; he turned the other over to his "family" for their sole and exclusive use, without any restrictions whatever. The only thing he did was retain title (probably for the purpose of paying for it) and secure the insurance policy in question that covered the car. It is undisputed that Mr. McGarrh exercised no control and had nothing whatever to do with the car. In effect, his family were the insureds. He knew that Deborah used the car frequently, to go to school, to carry her younger brother to school, to come to see him, to go to the skating rink, and any other place so long as it met with the approval of her mother. As she had done before, on the night in question, Deborah had used the car to go to the local skating *345 rink. Admittedly, no restrictions whatever were placed on her use of the car by either her father or her mother.
Now comes into play the purpose for the omnibus clause being statutorily required. While at the skating rink, Deborah loaned the car to a young friend for a short period of time for the purpose of going a short distance to visit a mutual friend. As stated above, there had been no restrictions placed on her prohibiting her from doing this. The record is clear on this point. Deborah testified:
If I needed to go to town for something, I would use the car. If I needed to go to a girl friend's house, I would take the car. If I had to go to the skating rink, I would take the car.
In answer to the question, "Did he give you any limitation or restriction as to the use of the car," she answered, "No, sir." She was further asked, "Did your father tell you specifically that you could not let anybody else use the car?" She answered, "No, sir." She was asked, "Did your father ever make any objection to the manner you were using the car?" She answered, "No, sir."
In the case of U.S.F. & G. Co. v. Stafford, supra, the Court, in discussing the application of the omnibus clause in regard to the young driver, stated:
... Other facts showing that Wayne Plunkett had full authority over the use of the automobile are that he made, and was helped by his mother to make, the payments on the car at Keller Motor Company; that he used the car to go to school and that it was left on the school parking lot all day; that he used it at night for "dates;" and that he would use the car to go back and forth to work and keep it with him while he was at work... .
The only difference here is that Deborah's father, being the man that he was, purchased the car and gave it to his former wife and daughter without any strings attached whatever and without any instructions on its use. In Travelers Indemnity Company v. Watkins, supra, cited in the majority opinion, the Court said:
It has been stated that the word "permission" has a negative rather than affirmative implication  that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized. The permission need not be express but may be implied. In a statutory omnibus clause, the word "permission," it has been held, should not be limited in meaning to merely legal permission, but should be construed for the benefit of persons injured.
In my humble opinion, the statutorily required omnibus clause was enacted clearly for the purpose, among other situations, to require coverage for persons injured by automobiles similar to that in this case. How can it be said that Deborah, having full unrestricted use and permission to use the car and using it for a purpose known to everyone, took the car out of the "implied permission" by loaning it to a friend for a short time to visit a mutual friend while she was skating. To hold otherwise, in my opinion, is making a farce out of the statutorily required omnibus clause. If it does not cover situations as set out in this case, the Legislature should do as the regulatory bodies already have done  that is, ignore the rights of the traveling public and repeal the statute. I would reverse and remand the cause.
LEE, J., joins in this dissent.
NOTES
[1] The record does not affirmatively show that James Creely was driving the automobile in which Vaughn was injured. However, a copy of the declaration in the case of Robert W. Vaughn v. James Creely was introduced for identification. The declaration affirmatively alleged that Creely was operating the automobile in which Vaughn was riding when he was injured. The suggestion for writ of garnishment was tried on the theory that Creely was in fact the driver of the automobile. No objection was made by the garnishee that Creely was not driving the automobile, because, in our opinion, the garnishee knew Creely was driving the automobile.
[2] See 5 A.L.R.2d 600-660 (1949) for annotation on the subject of coverage of automobile liability insurance policies under the "omnibus clause."
[3] See 7 Am.Jur.2d, Automobile Insurance, Sections 120, 121 and 122 for statements of the strict or conversion rule, the liberal rule and the moderate or minor deviation rule.